May it please the Court, I am here today on behalf of Ms. Flores and seven other women who seek for the first time to have their claims of sex discrimination certified as a class action. There are two issues presented here. First, whether tolling made those class claims timely, such that it was error for the District Court to dismiss the class claims at the outset of the litigation, and secondly, whether the Court had jurisdiction to consider the motion to intervene for purposes of appealing that dismissal of class allegations at the conclusion of the litigation. The motion to intervene in Summers was untimely in part because the would-be intervenors knew of their interest in the case long before the filing of their motion. Doesn't that factor weigh against the intervenors here? No, Your Honor. Here, as the Supreme Court held in United Airlines v. McDonald, absent class members are entitled to rely upon the named plaintiffs to pursue their interests and protect their interests until those claims are dismissed individually and it's clear that the named plaintiffs have no intention of appealing. And that is not clear until they had filed the stipulation of dismissal. Wal-Mart has argued that because there was an agreement in principle that the District Court had a couple months prior to the stipulation of dismissal, that that put the absent class members on notice. However, until there's an actual settlement, there is no settlement. In fact, the record reflects here there were two extensions of time needed to settle the claims of eight of the original named plaintiffs and a third extension of time before Ms. Odle actually reached agreement with Wal-Mart. Frankly, until that last paper was signed, it was not at all clear that the parties were going to be able to reach an agreement. And if you look at the Sixth Circuit decision in Clark v. Baptist Healthcare, there absent class members who sought to intervene prior to the judgment were deemed to not be permitted to intervene because the case was advanced in litigation and it was too late for them to intervene in the litigation, but too early for them to intervene for purposes of appeal. And it was only the later intervenors who sought to intervene after a voluntary stipulation of dismissal by the named plaintiffs. Those were found timely, and that's a recent decision from the Sixth Circuit that's really on all fours with this, both as to when the proper time is for absent class members to seek to intervene, if they're seeking to intervene solely for purposes of appeal, and also as to the ongoing jurisdiction after Rule 41, excuse me, after Rule 41 dismissal. And so the district court's ruling was that it lacked jurisdiction because the motion to intervene occurred after the voluntary dismissal. Yes, that was the district court's ruling. The district court didn't have the guidance of this court's recent decision in Summers v. Bank of America, in which the Fifth Circuit held that our case law does not forbid intervention in a jurisdictionally and procedurally proper suit that has been dismissed voluntarily. ODAL was a jurisdictionally and procedurally proper suit. It was then dismissed voluntarily, and this court has said that is not a basis to deny jurisdiction to consider a motion to intervene. Assuming, Arguendo, that the district court did have jurisdiction over a timely motion to intervene, what result? Intervention should have been granted. We have absent class members who... Do we render that, or do we send it back for some... What happens? I believe that this court certainly has ample record to simply grant intervention and move on to the merits of the appeal, which is the timeliness of the original class allegations. If this court chooses to remand to the district court, then a decision there will be made on intervention, and then there would be another round of arguing this on appeal. I think given that the arguments that have been primarily raised... But the next round wouldn't be on whether or not the district court lacked jurisdiction to entertain the motion to intervene. Correct, Your Honor. All right. However, given the record established here, the arguments raised by Wal-Mart on the face of conforming Fifth Circuit authority are inadequate basis to deny intervention. They've argued that four of the interveners did not have EEOC charges on file. That is correct, but under the single filing rule, that's not required. And specifically in circumstances like this, where somebody seeks to intervene at the conclusion of litigation for purposes of appeal, Berry v. Pierce and other Fifth Circuit authority have found that the single filing rule applies and no EEOC charges are required. As to the four who did file EEOC charges, Wal-Mart argued that they had not received right-to-sue letters and that that was a fatal defect for intervention. Not so. The Fifth Circuit squarely addressed that issue in Pinkert and said that where a right-to-sue letter is received after the filing, that cures the defect and the case can proceed. So the arguments raised against intervention are ones that fail on the face, and therefore it would make sense for this court to move on to the heart of the matter, which is the timeliness of the class claims that were originally pled in this case. How has this issue been decided in other jurisdictions? I guess the Sixth Circuit has decided the issue in the way that you wish us to decide it. That's correct, Your Honor. Have other circuits weighed in, and it seems district courts in different jurisdictions. No other circuit court other than the Sixth Circuit has addressed this specific issue in one of the follow-on Wal-Mart cases. The Sixth Circuit did rule squarely in favor of the argument that interveners present here. The Eleventh Circuit heard oral argument on these very issues just last month, but no decision has been issued in the Eleventh Circuit yet. And although not in a Wal-Mart case, the Seventh Circuit in Sawyer v. Atlas Heating did find that Shady Grove constrained application of prior jurisprudence on piggybacking and tolling in class cases and required a finding that where an individual has a timely claim, that only Rule 23 stands between them and class certification, not any special rules related to piggybacking or tolling in class cases. So both the Sixth and the Seventh Circuit have found in favor of plaintiff's position here as to the timeliness of the class claims, and no circuit addressing this issue since the Supreme Court issued its Shady Grove and Smith v. Bayer decisions has found the contrary. But even without looking at the more recent Supreme Court decisions, the Fifth Circuit authority in Salazar Calderon alone is enough to rule that plaintiff's class claims are timely here. In Salazar Calderon, there were three generations of class actions that were ultimately consolidated and brought up on appeal, and class certification had been denied in the second generation case, and that decision was affirmed by the Fifth Circuit, not on the grounds of tolling but on the merits of commonality there. As to the third generation, the only issue on where tolling was considered was with respect to individual claims in a third generation case, and we're not there. We're in a second generation case here, one in which the Fifth Circuit has not said the claims in Odal would be untimely. In fact, in Calderon 2, the court specifically said that if on appeal, instead of affirming the denial of class certification, if on appeal that had been reversed and a class had been certified, the timeliness of those claims must be judged on the date of the original filing, not the date the class is ultimately certified. And if we judge the class member claims here on the date that the Odal case was filed, well, that was just shortly after decertification in Dukes, and everybody agrees that on that date, class members had timely claims, and that's the date that is relevant for purposes of evaluating whether the class claims are timely. If the court has no further questions, I can reserve the remaining time for rebuttal. Thank you. May it please the court. On the first issue, the district court's jurisdiction, this court reiterated in the Summers case, and I'd like to quote from Footnote 5, a person may not intervene as a right in a jurisdictionally or procedurally defective suit. This case became jurisdictionally defective, that is, jurisdiction was terminated, upon the filing of the Rule 41A1A2 stipulation. That is the necessary, in fact, the express holding of this court's decision in small biz pros and gains and non-commissioned officers, all of which were discussed in that footnote and approved. What my friend, Ms. Weber, did not address is how the district court continued to have jurisdiction after that stipulation was entered, because it did not. Summers said in that footnote that that case was materially indistinguishable from Ford. Materially indistinguishable. Ford was a 41A2 case. A 41A2 dismissal requires a court order that is appealable. There's a jurisdiction retained for 30 days after entry of a 41A2 order. In a 41A1A2 order, there is no retention of jurisdiction. Same goes for McDonald. McDonald was a final judgment case. A district court retains jurisdiction after a final judgment for 30 days or until the notice of appeal is filed, whichever comes first. In McDonald itself, the intervention motion was filed 18 days after the judgment. In a 41A1A2 case, termination of jurisdiction happens immediately upon the stipulation. That's the holding of small biz pros. This court's precedent, small biz pros. And there is no jurisdiction. And the courts cannot expand it under Rule 82 of the Federal Rules of Civil Procedure, which says that jurisdiction can't be created. So when Summers reiterated that intervention cannot be had into a jurisdictionally effective suit, it was describing this case and saying that the district court here got it exactly right in denying the motion to intervene. And there's a... I'm sorry. So on May the 15th, 2015, the voluntary dismissal became effective. Is that right? And then on June 2nd, they moved for a leave to intervene. Is that right? So that it's your position that there's no 30-day window? That's correct, Your Honor. Under Rule 41A1A2 stipulation, which was filed on May 15th, 2015, that immediately became effective, no court order required, and immediately stripped the district court of jurisdiction. And there is no case anywhere in the United States from any appellate court saying that jurisdiction continues after that. But when could they have intervened in that circumstance? Your Honor, they had several windows. First, of course, the district court denied or dismissed the allegations of persons not named in the odal complaint way back in 2012. And this court denied the interlocutory appeal request on March 19th, 2013. On that day, they were well on notice that it was quite likely, if not certain, that the individual claims were going to proceed only as individual claims. In other words, the claims of the absent persons had been dismissed, and this court had denied the appeal. They could have intervened at that time. Later in the case, Judge Elrod, these proposed intervenors are represented by the same counsel. Were they required to intervene after March 31st, 2014, when the Fifth Circuit reversed? When were they required to intervene? Your Honor, to protect their rights, they should have protected their own rights by filing an action within the post-Dukes deadline established by Judge Breyer in California. I don't want to mix up the two issues, but they are related here. I have my own timeline that I've put together. I have one too. I hope they sync up. Well, it would be good in the briefs next time, in a case like this, to have timelines. Go ahead. I appreciate that, Your Honor, and I apologize. Three important dates I'd like to point out. On August 19th, 2011, Judge Breyer issued an order, after the Supreme Court ruled, establishing date certains by which all former Dukes class members had to file EEOC charges or suits, and that was on agreement of the parties in California where the original Dukes case was filed. That deadline was either January 27th, 2012, in non-deferral states, or May 25th, 2012, in deferral states. Texas is a deferral state. So the long answer, Judge Elrod, to your question is they should have intervened or filed their own suit by, or filed an EEOC charge, by May 25th, 2012. And we know that from this Court's decision in this case. Remember, this is the second appeal in this case. And in the first appeal, this Court said, and this is 747F3rd, page 320, quote, tolling does not continue indefinitely. Rather, quote, tolling ceases. And when does it cease? Upon decertification. And at that time, what are former class members required to do? And this Court spoke to this with crystal clarity, and I quote, former class members, quote, are obliged, obliged, to file individual suits or intervene. That was in this Court's decision in this case, relying on this Court's precedence in Hall and Taylor, making clear what the obligation of the former Duke class members was. So Judge Elrod, they should have protected their own rights by May 27th, May 25th, 2012. But they didn't. Their claims are barred by the statute of limitations enacted by the Congress of the United States. Okay. Assuming, Arguinda, that we don't agree with you about that for some reason, when it comes back around in April of 2015 and they voluntarily dismiss their claims after reaching a settlement, and then that's the six co-plaintiffs, and then May 15th, 2015, is it to your point that if they had done it on April 21st, would that have been okay? The District Court had jurisdiction until May 15th, 2015. Their intervention motion still may have been untimely, which would be a different question within the discretion of the District Court that he never reached, but the Court would have had jurisdiction to reach it. And there was certainly a window in this case, Your Honor, between March 11th, 2015, when the parties publicly notified the District Court and the world of the impending settlement, and two months later in May when the settlement was finalized and the stipulation was filed. What about the argument that it would have been premature and they could have gotten in trouble for going prematurely or something? There's no support for that. It's not true. They could have intervened at that time, Your Honor. But there's some cases, though, this case has that unique thing where there's two steps, where the April 20th and the May 15th step. But some cases, I assume, would be done all in one fell swoop on one day, so there'd never be an opportunity at that point, because if you say there's no 30 days. Your Honor, Ms. Weber and her partners represent both groups of claimants here. They represent the named plaintiffs that settled, and they represent these proposed interveners. Had they wished to preserve jurisdiction under small bris pros in Coconin and Inago and all those cases, they could have either conditioned the settlement on retention of jurisdiction or they could have agreed to retain jurisdiction, which would require a court order, proceed under 41A2. They had the option of requesting that. They would have had to negotiate that. In a case where they live across the country and are not talking regularly to the other lawyers and that sort of thing and not representing them. So you never have a window at that point. So any time it's dismissed, you're done. Your Honor, that's not this case, to be clear. There's no doubt what I just said is correct, that these plaintiffs are represented by the same people. But yes, the answer is when there is a 41A1A2 stipulation of dismissal, it terminates jurisdiction. And that is the only answer that... And you're not suggesting that there ought to be some exception because these attorneys happen to be representing the same plaintiffs. Not at all, Your Honor. My point only is to the extent there is a perceived... So your interpretation would apply irrespective of whether or not they were representing the same plaintiffs. Absolutely right. Absolutely right. My only point was there are... Your point is if anybody knew, they knew because they represented the same plaintiffs. Well, and they chose to proceed under 41A1A2 rather than under 41A2, which is an alternative means of securing a voluntary dismissal that has different jurisdictional consequences. There are different paths to the same result. The path that was chosen here has certain consequences that have to be enforced by the courts, which is what the district court did here. In other words, the manner in which this case was settled and dismissed cut off jurisdiction at that date. And that is true across the board. Of course, those are clear rules that need to be applied uniformly, even-handedly, and consistently. And we think the district court did here. I'd like to briefly address the Clark case from the Sixth Circuit. Clark did not mention jurisdiction. The word jurisdiction doesn't appear anywhere in the opinion. It was only a timeliness case. It is not authority for jurisdiction. Again, I challenge Ms. Weber to get up on her buttock has ever found jurisdiction after a 41A1A2 dismissal because that case doesn't exist. Are you asking us to find our precedent to violate the rule of orderliness in some way? There is a rule of orderliness issue depending on how Summers is read. Right. You're relying on Summers, but you're not. The reason is this, Your Honor. The stipulation in Summers recites 41A1A. However, it required an order of the district court to implement. Therefore, in operation, it was 41A2. And the court said in that footnote that it's materially indistinguishable from Ford, which was a 41A2 case. If Summers is viewed as a 41A2 case, no problem. All of this court's precedents are lining up and there's no issue. If Summers is viewed as a 41A1A2 case that says there is jurisdiction that follows such a stipulation, then it runs flat-smack irreconcilably into small-biz prose, which says in so many words, quote, this is at page 461, according to the text of 41A1A2 and our precedent, a district court's jurisdiction over a case that is settled and voluntarily dismissed by stipulation cannot extend past the filing date, absent an express contingency or extension of jurisdiction, neither of which we have in this case. So that's the rule of orderliness issue with respect to Summers is how the stipulation is characterized in Summers. In our case, we had no question about that. There was no court order requested or required. It's clearly a 41A1A2 case. Couldn't we find that Summers, it was more specific, it's more factually on point that the other case is not? I mean, and then also there's been intervening Supreme Court authority. There are lots of options other than the one you present, that it violates the rule of orderliness. Your Honor, there's no intervening Supreme Court authority on this question. Coconin is the last case to address this, which was before small-biz prose. And it's not more specific because, again, Summers doesn't mention jurisdiction either. The last jurisdiction case this court had was small-biz prose, which is very clear on jurisdiction. So I don't think there's any conflict in the court's decisions, as I proposed it. And also, if you were to adopt that reading of Summers, you would be creating a circuit conflict with the 11th Circuit's Inago decision, the 3rd Circuit's state national insurance decision, and many others. But there's already a circuit split. There's not a circuit split on this issue, Your Honor. On the timeliness of the jurisdiction to consider the intervention motion, all circuits are in accord. There is no circuit that has ever found jurisdiction. The only case they will cite in rebuttal is the Clark case, which is a timeliness case, not a jurisdiction case, and the McDonald case, which is a timeliness case, not a jurisdiction case. So there's not a circuit conflict, and this court would be creating one if it ruled for the proposed interveners on this jurisdictional question. If I could move second to the stacking question. This court has long held Salazar Calderon was, in fact, the first circuit court ruling on the anti-stacking rule that has now been followed by every other circuit to consider the question. And it makes sense. It makes sense for exactly the reason that this court said in Oval, in this case, in the previous decision in this case, tolling comes to an end at the decertification ruling because American pipe is a balance. It strikes a balance between Rule 23 on the one hand and statutes of limitations on the other. It cannot be indefinite. Again, to quote this court again, tolling does not continue indefinitely. There must be a cutoff point, and it must be a cutoff point that's uniform, known in advance, invariable so that parties and judges can plan their conduct in light of it. Crown Court in the Supreme Court established that cutoff point as the decertification ruling. This court in Odal confirmed that that is the cutoff point. And in this case, that's when the Supreme Court ruled in Dukes and the following extension by Judge Breyer on agreement of the parties. What the plaintiffs, what the proposed interveners are seeking here is indefinite tolling. They're saying so long as some class action is pending somewhere, the statute of limitations never ends. Remember, this is a 300-day statute. We're now talking about conduct that took place allegedly in 1998. We're in 2017, Your Honors. If this is not a case of indefinite tolling, it's hard to imagine one that would be. The prior precedent rule, as opposed to the rule of orderliness, Judge Elrod, does require this court to follow Salazar-Calderon. And while my colleague tries to distinguish Salazar-Calderon because of the second and third and blah, blah, blah, it doesn't really make any sense. And Salazar-Calderon clearly holds that you don't get new tolling from a second class action, which is what they're seeking. And nor is it correct that the Supreme Court has overruled. Remember, under this court's version of the prior precedent rule, hints and tea leaves from the Supreme Court are not enough. Overruling must be, quote, unequivocally directed by the Supreme Court. My friends cite two cases, Smith and Shady Grove. Between the two of them, they mention tolling exactly once, in footnote 10 of Smith, in a manner that confirms this court's Salazar-Calderon rule. It says, after certification, the former class members have to file individual suits, which is exactly the position that this court has always taken and that Walmart takes in this case. So the two cases from the Supreme Court that are said to overrule Salazar-Calderon, in fact, confirm them. The confusion, and I must address the fifth case from the Sixth Circuit, the confusion that has arisen is that Smith v. Baer correctly said that former class members are not collaterally estopped by class certification rulings. In the fifth case, following the lead of Judge Easterbrook in the Sawyer case, said that these anti-stacking cases were based on collateral estoppel, and therefore they don't apply anymore. That's just wrong. Collateral estoppel or issue preclusion was not mentioned in Salazar-Calderon and has never been mentioned in any of the other stacking cases that have been followed by the other circuits. It's just a mischaracterization of what's going on in those cases. These are tolling cases. Tolling starts when the class complaint is filed, and it ends on the certification ruling. That's the holding of the Supreme Court in the Crown Court, reiterated by a footnote 10 of Smith v. Baer. That's all that's involved here. Is it your point, though, that we don't need to wade into this at all? You've already decided this, Your Honor, if that's your question. No, but is a ruling on this a mandatory if we were to agree with the earlier argument? Your Honor, since the district court did not have jurisdiction and the motion to intervene was properly denied, the judgment should be affirmed on that basis. This court doesn't ever need to reach the tolling question, the stacking issue, Smith v. Baer, FIPS, or anything else. That's correct. Because they're only standing. If their motion to intervene was properly denied, they have no standing to complain about. These are all only if you get past that barrier. Only if they get past that barrier. Yes, the case. Only if the case gets past that barrier. Yes, and to answer one of your earlier questions to my colleague, Judge Elrod, this is not a reverse-and-render case. If the court were to find jurisdiction to consider the motion to intervene, which we suggest the court should not, but if the court did, there are serious questions about whether this motion could ever be granted. Four of these proposed interveners have never filed the EOC charges. How they could possibly intervene in a case is beyond me, but they could explain that to the district court. And the other four waited way too long, way too long, and the district court would have the discretion to deny that under Summers. Why couldn't they intervene, and then if they don't have the right documents, that they haven't exhausted or whatever, then that's a separate argument? Well, Your Honor— Why do you have to do that all in one fell swoop? The four that never filed have a statute of limitations bar because that's a jurisdictional requirement to bringing a Title VII suit. So they're just out of court. The other four would be jurisdictional— or, excuse me, discretionary with the district court. But we think Summers—the text of Summers, the holding of Summers is that a late file of motion to intervene is a factor to be taken into account by the district court in deciding whether or not to grant it. We very much think these are years and years too late for these motions to intervene. Right, but that's a different question as to whether they've met the prerequisites of their underlying suit. Two different arguments as to the two— there's two groups of proposed interveners here, and we would make both of those to the district court to revet. This court has further questions? No, thank you. Thank you, be happy. We urge the court to affirm the judgment. And you've saved time for rebuttal. Your Honors, this court's decision in Summers was a Rule 41a case. The small biz pro decision, another Fifth Circuit decision, said the fact that a court enters an order following a voluntary stipulation of dismissal doesn't take it out of Rule 41a and put it into Rule 41a2,   The small biz pro decision, another Fifth Circuit decision, the court in Summers very directly addressed jurisdiction and said specifically that small biz pros does not stand for the proposition that a voluntary stipulation of dismissal deprives the district court of jurisdiction. Could not be clearer than that. But even setting aside the very clear dictates in Summers, it's the only logical result because Rule 41 permits a stipulation to affect only the parties to that stipulation. The individual plaintiffs and Walmart here. The individual named plaintiffs and Odal had no right to waive the claims of putative absent class members. They could not do so absent of fairness hearing and approval by the district court. So they cannot achieve the same result by the fact that the dismissal of their claims following individual settlement was by way of a stipulation rather than by way of a joint motion. To rule otherwise would provide defendants an incentive to buy off named plaintiffs with excessive payments of over and above the value of their individual claims just to get the side benefit of preventing anybody from later moving for intervention to appeal a denial of class certification. Even though the Supreme Court in United Airlines v. McDonald specifically recognized the importance of providing that right as the only way to obtain appellate review of denials of class certification in the many instances where named plaintiffs subsequently settle individually. Would it have been safer to have done this on April 16th? In some respects, Your Honor, yes. And that could have been... If that could have been done, that would have been one option. But United Airlines specifically addressed the issue of timeliness and said it was appropriate to wait until the conclusion of the litigation to see if there's going to be further action by the named plaintiffs. The suggestion by my colleague that intervention should have been sought after class allegations were dismissed or at least after interlocutory appeal was denied is inconsistent in its entirety with United Airlines v. McDonald which said if your purpose in intervening is not to litigate your individual claim but if your purpose in intervening is simply to appeal the denial of class certification the appropriate time to do that is at the conclusion of the litigation if the named plaintiffs themselves are not going to appeal. The fact that interlocutory appeal was denied far from giving notice to absent class members that they should have intervened that showed that the named plaintiffs had an interest in continuing to push the class allegations even after they were originally dismissed. It would have been equally plausible for the putative class members to expect the named plaintiffs to go try their claims get a judgment on the merits one way or the other and at that point the named plaintiffs without any interveners would have had the right to appeal and have their class allegations reviewed by this court on appeal. So there was absolutely no reason for absent class members to believe that they had to intervene prior to the conclusion of the litigation which was the date that the Supreme Court set as the point to judge timeliness in United Airlines v. McDonald. And this would be consistent not only with Supreme Court precedent and Summers from the Fifth Circuit but it would be consistent with three other circuit courts that have considered and accepted intervention by absent class members after cases have been dismissed on Rule 41 stipulations of dismissal. Whether or not they explicitly addressed jurisdiction in the text of the decisions, the courts obviously were satisfied that they had jurisdiction or they could not have issued those rulings not only in Clark in the Sixth Circuit but also in Coyke v. Starbucks in the Ninth Circuit and Shelton in the Fourth Circuit which held that it was required for a district court faced with a stipulated dismissal in a case in which class allegations had originally been part it was incumbent upon the district court to ensure the dismissal was not operating so as to prejudice the rights of absent class members. So is it your position that we could write an opinion that would say that in Summers we specifically said that small biz prose does not stand for the proposition that you're opposing counsel's articulating and it doesn't violate the Rule of Ordinance and it was addressing it and limited the other case before it applied the law and we say therefore there is jurisdiction, the district court had jurisdiction we remand and that could be the whole thing. I know you want to win the intervention but really the issue is the jurisdiction before us. Certainly the court has the right to make that ruling and to simply recognize the jurisdiction and remand this back to the district court. Is that what you want us to do? We really think it's appropriate for the court to recognize the intervention and move on to the tolling issue as well but at a minimum we certainly would request that the court recognize that there was jurisdiction to address the intervention motion itself. As to the merits of the tolling argument Your time is up, I'm sorry. I'm sorry, I thought I had reserved additional time. You did, you had seven minutes left on the thing when you sat down. That's what I was counting on, Your Honor. If I could just take one minute to address the Salazar issue. You may. Your Honor, what we are proposing isn't entirely consistent with Salazar because Salazar said no new round of tolling. No additional tolling is going to occur from the second class case for any future cases. But we're not depending on any further tolling here. The only tolling we're seeking is the original tolling everybody agrees we had from Duke's and because the timeliness of the class claims must be judged as of the date the odal case was filed based on Duke's tolling alone, those class claims are timely. So it really would not allow for indefinite tolling into the future because only cases that were filed right after the conclusion of Duke's would be getting the full benefit of tolling and there would be no new tolling rights created. Thank you. Thank you, Your Honor. This case is submitted.